# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **RYAN M. HUMPHREY,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Civil Action No.: 4:13-CV-01421-RDP |
| } | |
| **CAROLYN W. COLVIN,** } | |
| Commissioner of } | |
| Social Security, } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OF DECISION

Plaintiff Ryan Humphrey brings this action pursuant to Title II of Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision of the Administrative Law Judge ("ALJ") denying his claim for a period of disability and disability insurance benefits ("DIB"). *See also* 42 U.S.C. § 405(g). Based on the court's review of the record and briefs submitted by the parties, the court finds that the decision of the ALJ is due to be affirmed.

**I.     PROCEEDINGS BELOW**

Plaintiff filed for disability and DIB on October 20, 2009 alleging a disability onset date of August 10, 2009. (Tr. 114-16). Plaintiff's application was denied initially on December 9, 2009. (Tr. 73). Plaintiff then requested and received a hearing before ALJ Jerome L. Munford on November 9, 2011. (Tr. 36-72, 80-81).[1]  In his decision, dated January 26, 2012, the ALJ determined that Plaintiff has not been under a disability within the meaning of the Act since October 20, 2009, the date of Plaintiff's application. (Tr. 32). After the Appeals Council denied

---

[1] Plaintiff was represented by attorney Sandra C. Roberson during his hearing before the ALJ on November 17, 2011. (Tr. 23).

Plaintiff's request for review of the ALJ's decision (Tr. 1), that decision became the final decision of the Commissioner and therefore a proper subject of this court's appellate review.

At the time of the hearing, Plaintiff was thirty-nine years old and had a twelfth-grade education. (Tr. 30, 42, 114). Plaintiff reported pinched nerves, a herniated disc in his neck, a slipped disc in his back, and arthritis as limiting his ability to work. (Tr. 137). Plaintiff further alleged that he experiences migraines which he claims "pretty much incapacitate [him]." (Tr. 50).

With regard to his domestic life, Plaintiff reported to the ALJ the following when asked what he did with himself all day: "basically . . . [I] would be getting up, get something to drink, go sit in the recliner . . . . It's just watch TV is about the only thing I really have to do." (Tr. 59-60). Plaintiff explained to the ALJ that his pain has prevented him from attempting to return to work since 2009, and that he spends anywhere from seven to ten hours per day in his recliner. (Tr. 46, 54). Plaintiff reports that his pain is more severe while sitting, that driving is extremely painful, and that simply walking to the mailbox is a daily challenge. (Tr. 44-45). Plaintiff further reported that the most weight he might be able to lift and carry was "probably like a gallon of milk." (Tr. 45).

Plaintiff has performed past relevant work as a helper/assistant, cashier, clerical worker, and, most recently, as a pizza delivery driver. (Tr. 57-59). Plaintiff's work activities included assisting technicians, hauling equipment from one location to another, and running a cash register; however, Plaintiff reported that "[d]elivery is probably the majority of it." (*Id.*). While working as a helper/assistant, Plaintiff claims that he was required to do "nothing strenuous," and that he "was basically just a go for helper, go get this box, you know, haul this or something like that." (Tr. 57-58). As a cashier/clerk, Plaintiff would sit or stand behind a desk or assist in

moving equipment from one location to another. (Tr. 58). Plaintiff alleges that he has "a lot of trouble with sitting or standing or laying" and that sitting for thirty minutes would be "probably like a marathon for me." (Tr. 42, 44, 137). Specifically, Plaintiff reports that he experiences extreme pain while sitting because sitting "push[es] up on my spine . . . causing pinched nerves to pinch a little harder."[2] (Tr. 44).

During his reported period of disability, Plaintiff was first seen by Dr. Wilcox, Jr. on August 10, 2009; Plaintiff chiefly complained of pain in his neck and lower back. (Tr. 162-63).[3] Dr. Wilcox diagnosed Plaintiff with sciatica and cervical spasms, prescribed him Soma, Vicodin and Dexamethasone, and referred him to Dr. Upadhyey for pain management. (Tr. 163). The medical evidence of record indicates that Plaintiff was treated by McClellan Family Chiropractic on at least one occasion during his alleged period of disability. (Tr. 164-65).

Next, from March 2, 2010 through April 26, 2010, Plaintiff was treated by Northeast Orthopedic Clinic. (Tr. 181-89). After examining an MRI of Plaintiff's spine, Northeast Orthopedics diagnosed Plaintiff with "minor disc bulges at a couple of levels that don't produce significant neurologic compromise," as well as "mild scoliosis;" however, the treating physician noted that, "[a]t this point I don't have a reason for all the discomfort he describes." (Tr. 182).[4] Plaintiff was also treated for spinal pain at Knighten Family Chiropractic from January 20, 2011

---

[2] Plaintiff also reports that his back pain causes him difficulty sleeping and that the "pinched nerve in [the] back of [his] neck cause[s] the whole side of [his] arm up to [his] chest . . . and parts of [his] legs just to go completely numb, like electricity shooting through it kind of a numbness." (Tr. 47).

[3] Medical reports from Dr. Wilcox's office indicate that Plaintiff is a cigarette smoker. (Tr. 162).

[4] Plaintiff specifically requested an MRI from Northeast Orthopedics in order to try and gain disability status. (Tr. 184). Treatment records indicate that the treating physician "emphasized to him that there is really not any pathology here I would expect to find on an MRI but he says he is trying to get his disability and I would like to document his current situation." (*Id.*). As explained above, the MRI requested by Plaintiff did not "produce significant neurologic compromise," however, the MRI did confirm the finding of "mild scoliosis." (Tr. 182).

through August 12, 2011; medical records indicate that, during Plaintiff's last visit to Knighten, his complaints of pain were "an exacerbation of his neck and mid back problems." (Tr. 191).

A consultative examination ("CE") was performed on June 18, 2011 by Dr. Sathyan V. Iyer. (Tr. 169). Dr. Iyer performed a musculoskeletal examination and medical source opinion as requested by Disability Determination Service. (Tr. 170). Dr. Iyer took into consideration Plaintiff's complaints of neck and back pain, his past physical therapy and chiropractic treatment, his MRI scan, numbness present in his extremities, his weak grip strength, and his pain management referral when diagnosing Plaintiff for disability determination. (*Id.*). After performing diagnostics on Plaintiff, Dr. Iyer stated, "In his current condition, he may have some impairment of functions involving bending, lifting, and overhead activities. He does not have limitation of functions involving sitting, standing, walking, handling, hearing, or speaking." (Tr. 172).[5] The CE indicated that Plaintiff could frequently lift up to 10 pounds and could occasionally lift from 11 to 20 pounds; further, the CE indicated that Plaintiff could frequently carry up to 10 pounds and could occasionally carry from 11 to 20 pounds. (Tr. 175). Dr. Iyer found Plaintiff capable of walking, sitting, and standing, for one hour at one time without interruption. (Tr. 176). Plaintiff was also found to be capable of walking, sitting, and standing for a total of four hours in an eight hour work day. (*Id.*). Finally, the CE indicated that the limitations found to affect Plaintiff have lasted or would last for twelve consecutive months.[6] (Tr. 180).

---

[5] Dr. Iyer's impression of Plaintiff noted possible degenerative joint disease of the cervical spine, possible degenerative joint disease of the lumbar spine, history of left ulnar nerve neuropathy, and a history of depression. (Tr. 172).

[6] Based on Plaintiff's impairments, Dr. Iyer found Plaintiff capable of performing activities such as shopping, traveling without a companion for assistance, and walking without the assistance of a wheelchair, walker or crutches. (Tr. 180). In addition, Dr. Iyer opined that Plaintiff could walk a block at a reasonable pace on rough or uneven surfaces, that he could use public transportation, and that he could climb a few steps at a reasonable pace with the use of a single handrail. (*Id.*). Plaintiff was also found capable of preparing a simple meal for purposes of

Toward the end of Plaintiff's hearing, the ALJ posed a hypothetical question to the Vocational Expert ("VE"). (Tr. 63). The ALJ asked if a "younger individual who has a high school education, three quarter years of college" could:

> occasionally bend, stoop, crouch, or twist. No left upper or lower pushing and/or pulling. I'm going to say no driving. No climbing. Those are the restrictions that I want you to consider at this point. Set aside for a moment this gentleman's past relevant work, which you've identified previously as being performed at the light exertional range and tell me whether or not in your opinion if there would be any other light work opportunities that you believe the [Plaintiff] could perform, please.

(Tr. 63-64). The VE responded to the ALJ's question by stating that, "[y]es, Your Honor, there would be. At the light level, samples would be reception work,"[7] "unskilled general clerical work,"[8] and work as a "cashier."[9] (Tr. 64). The ALJ posited a second hypothetical question for the VE: "Let's go back to Mr. Humphrey's past relevant work as you've described it. As I have detailed him, would he be capable of returning to any of his past relevant work activity or activities, please?" (Tr. 65). The VE responded, "[a]s a General helper at the pet store in sales, yes. And at Timberlake as the Clerical Worker, yes." (*Id.*). Next, the ALJ asked "[s]o he could go back to the Clerical Worker position, which you mentioned was at sedentary and there's a clerk position that you believe he could go back to, Ms. Jacobson, as I've described them?" (*Id.*). The VE responded affirmatively. (*Id.*). The ALJ then posed another hypothetical question, this time asking the VE to "consider that I determine Mr. Humphrey can do no

---

feeding himself, caring for his personal hygiene, and, in Dr. Iyer's opinion, was capable of sorting, handling, and using papers/files. (*Id.*).

[7] The VE testified that approximately 1,000 reception work jobs were available in Alabama at the time of Plaintiff's hearing. (Tr. 64).

[8] Approximately 2,400 general clerical worker positions existed in the state of Alabama at the time of Plaintiff's hearing. (*Id.*).

[9] The VE stated that at least 4,000 cashier positions were available in the state of Alabama at the time of Plaintiff's hearing. (*Id.*).

5

bending, that's the only change, but he can still occasionally stoop, crouch, or twist, but no bending . . . would he still be able to do the sedentary examples of jobs that you mentioned, please?" (Tr. 66). Again, the VE responded affirmatively. (Tr. 66). Next, the VE inquired:

> If I determine in any of the scenarios positive that the claimant experiences a degree of moderately severe to severe pain with attended moderately severe to severe limitations on his ability for concentrating, heavier requisite pace and persistence that's required to perform ordinary job tasks, would that generally prevent him from working in your opinion?

(Tr. 67). The VE responded, "Yes, Your Honor. It would eliminate any job. There would be no work." (*Id.*). Finally, the ALJ posed his last hypothetical to the VE:

> I want you to consider that I determine that Mr. Humphrey is capable of sitting at one time without interruption one hour, stand one hour and walk one hour and in a total in an eight hour work day that he can sit for four hours out of eight, that he can stand for four hours out of eight and he can walk for four hours out of eight. First of all, does that give you enough information to make an opinion or offer an opinion as to the exertional range of work activity, if any, that he can perform? What do you think?

(Tr. 71). The VE responded that, "[i]t would depend on the weight lifted." (*Id.*). The ALJ subsequently thanked Plaintiff and adjourned his hearing. (*Id.*).

Based on the VE's testimony, Plaintiff's testimony, and the entirety of the record, the ALJ found that there exists a significant quantity of jobs in the national economy that Plaintiff could perform, in conformance with the Medical-Vocational Guidelines provided at 20 C.F.R. § 404, Subpart P, Appendix 2 and that, therefore, Plaintiff is not disabled. (Tr. 30-32).

**II.    ALJ DECISION**

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is

work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

In the present case, the ALJ determined that Plaintiff has not engaged in substantial gainful activity and has "severe" impairments of a herniated disc in his neck and a slipped disc in his upper back, that satisfies the second prong of the analysis as set forth in 20 C.F.R. §§ 404.1520(c) and 416.920(c). (Tr. 26). The ALJ also found Plaintiff's chronic pain, "which averages 5 to 6 out of 10 and limits his mobility," as well as his numbness and tingling in his extremities, to be non-severe impairments. (Tr. 27). With regard to the third prong, however, the ALJ found that Plaintiff does not have an impairment, or combination of impairments, that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 26).

The ALJ found that all of these impairments, individually or in combination, are insufficient to qualify Plaintiff for disability. (Tr. 26-32). First, while the evidence does indicate that Plaintiff suffers from a herniated disc in his neck, upon "examination . . . there was no motor deficit or lower extremity symptoms" and Plaintiff "demonstrated normal reflexes, and normal motor and sensory examinations." (Tr. 28). Second, as it relates to the slipped disc in Plaintiff's upper back, the MRI "indicated some minor disc bulges at a couple of levels;" however, those disc bulges "did not produce significant neurological compromise" and "mild scoliosis was again confirmed." (Tr. 28). Finally, the ALJ found Plaintiff's statements concerning his impairments and their impact on his ability to work not fully credible "in light of the medical history, the reports of the treating and examining practitioners, and the clinical findings made on examination." (Tr. 30).

In the final steps of the analysis, the ALJ found that Plaintiff is unable to perform his past relevant work as a general helper, light and unskilled. (Tr. 30). However, based on the hypothetical questions posed to the VE, the ALJ determined that, taking into account Plaintiff's

age, education, work experience, and RFC, Plaintiff is "capable of performing other work" and found Plaintiff "not disabled." (Tr. 31).

### III. PLAINTIFF'S ARGUMENTS FOR REVERSAL

Plaintiff presents several arguments: (1) the ALJ's failure to "discuss the claimant's herniated disc of his cervical spine at all regarding [his] pain and credibility renders his decision unreviewable and due to be reversed," (2) the ALJ erred in not ordering a CE to be performed by a neurologist for "further evaluation of his herniated cervical disc, related left arm pain, and resulting migraine headaches," (3) the ALJ erred by giving the VE incomplete hypothetical questions, and (4) the ALJ erred by not including all of Plaintiff's impairments in his hypothetical questions to the VE. (Pl.'s Mem. 11-13).

### IV. STANDARD OF REVIEW

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to

support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V.  DISCUSSION

After careful review, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the ALJ applied proper legal standards in reaching that decision. The court addresses each of Plaintiff's arguments below.

### A.  The ALJ Did Not Err by Failing to Discuss Plaintiff's Herniated Disc of His Cervical Spine Because Evidence of Record Indicates Plaintiff's Medical Condition Was Considered As a Whole

Plaintiff first asserts that the ALJ committed reversible error by failing to discuss his "herniated disc of his cervical spine at all regarding [his] pain and credibility." (Pl.'s Mem. 11). The Commissioner responds by noting that Eleventh Circuit precedent does not require an ALJ to enumerate every factor in every decision, and contends that the ALJ did not err in the present case so long as the ALJ considered Plaintiff's medical condition as a whole. (Comm'r Mem. 5). Indeed, the Eleventh Circuit has held that "the district court must review the agency's decision and determine whether its conclusion, *as a whole*, was supported by substantial evidence in the record." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) (emphasis added). Therefore, contrary to Plaintiff's assertions, the fact that the ALJ failed to specifically discuss Plaintiff's cervical spine impairment in regards to his claims of pain and credibility does not render the ALJ's decision reversible. *See id.*

Here, the ALJ stated that he reviewed Plaintiff's subjective complaints of pain in accordance with Social Security Ruling 96-7p and Eleventh Circuit case law. (Tr. 26-30). After discussing Plaintiff's medical evidence of record, the ALJ stated that, "X-rays of the cervical spine showed good vertebral alignment and good maintenance of disc space height" and then went on to explain that "an MRI in April 2010 only confirmed the existence of mild scoliosis," before determining that substantial evidence "fails to corroborate the allegations of disability." (Tr. 30). Therefore, because the ALJ's opinion discusses the credibility of Plaintiff's claims regarding his condition as it relates to his cervical spine (albeit, briefly), and because the ALJ's finding of Plaintiff to be "not disabled" is supported *as a whole* by substantial evidence of record, the court finds Plaintiff's argument unavailing and affirms the decision of the ALJ.[10]

### B. The ALJ Did Not Err in Not Ordering a Subsequent Consultative Examination

Next, Plaintiff asserts that the ALJ erred in "not sending [him] to a neurologist for further evaluation of his herniated cervical disc, related left arm pain, and resulting migraine headaches" and that failure compels a conclusion that the ALJ did not fully and fairly develop the evidence regarding his neck and arm conditions. (Pl.'s Mem. 12). Certainly, an "ALJ has a basic duty to develop a full and fair record." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). However, "[Plaintiff] bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison*, 355 F.3d at 1276. In addition, "there must be a showing of prejudice before it is found that [Plaintiff's] right to due process has been violated to such a

---

[10] The ALJ included limitations in the RFC finding related to Plaintiff's left-sided herniation by limiting Plaintiff's use of his left arm and limiting him to light work. (Tr. 26). Moreover, the record does not indicate that the ALJ used the MRI findings regarding scoliosis to discount Plaintiff's complaint regarding his neck or the medical information obtained from X-rays taken of his cervical spine. The April MRI only examined Plaintiff's thoracic spine (Tr. 183), so the ALJ's references to that MRI cannot, and should not be, interpreted as ignoring the herniated disc in Plaintiff's cervical spine.

degree that the case must be remanded to the [Commissioner] for further development of the record." *Graham*, 129 F.3d at 1423. Significantly, "[t]he court should be guided by whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" *Id.*

Plaintiff's contention that the ALJ failed to fully develop the record by failing to order a second consultative examination (to evaluate his herniated disc and related arm and migraine pain) is off the mark. An ALJ is *not* required to obtain an additional consultative examination as long as the record contains sufficient evidence to allow the ALJ to make an informed decision and a subsequent consultative examination is only required when "necessary information is not in the record and cannot be obtained from the claimant's treating medical sources or other medical sources." *See* 20 C.F.R. § 404.1512(f); *Doughty v. Apfel*, 245 F.3d 1274, 1280-81 (11th Cir. 2001); *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999). In the instant case, Plaintiff failed to show that he was prejudiced regarding development of the record, as the record contained sufficient evidence for the ALJ to make a decision regarding Plaintiff's claim for DIB – the lack of a second consultative examination (as Plaintiff asserts he deserves) did not create an evidentiary gap. In reaching his decision, the ALJ had before him all treatment records related to Plaintiff's neck and back pain, including MRI and X-Ray results, as well as results from Plaintiff's first consultative evaluation (which evaluated Plaintiff's pain, range of motion, and muscle strength). The record contains sufficient evidence for the ALJ to have reached the conclusion that Plaintiff is not disabled and Plaintiff has failed to demonstrate that another consultative examination could have changed the ALJ's decision. Therefore, as it is Plaintiff's ultimate burden to produce evidence which demonstrates that he is disabled, *Ellison*, 355 F.3d at 1276, and because Plaintiff failed to show that he was prejudiced or treated unfairly due to evidentiary gaps in the record, *Graham*, 129 F.3d at 1423, the ALJ was not required to order a

subsequent consultative examination and substantial evidence supports the ALJ's ultimate finding of "not disabled."

### C. The ALJ Provided a Complete Hypothetical Question

Plaintiff next asserts that the ALJ erred by failing to provide the VE with a complete hypothetical question. (Pl.'s Mem. 12-13). When a claimant has non-exertional limitations (such as Plaintiff's chronic pain) that preclude reliance solely upon the grids for a determination of whether there are other jobs available in the national economy that claimant is capable of performing, the ALJ must determine whether the claimant can perform other jobs by soliciting the testimony of a VE who is asked to consider a hypothetical individual with the same limitations as claimant. *See Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). Expert vocational testimony, in response to a hypothetical question accurately reflecting Plaintiff's RFC, provides substantial evidence to support a finding that Plaintiff is capable of performing a significant number of jobs in the national economy. *See Phillips*, 357 F.3d at 1240.

Here, Plaintiff cites only one of the six hypothetical questions posed to the VE and claims that singular question is incomplete and therefore constitutes reversible error on behalf of the ALJ. However, the record demonstrates that all six hypothetical questions, in part or in conjunction, form a complete hypothetical inquiry that equipped the VE could make a determination of whether there were other jobs present in significant numbers in the national economy that Plaintiff is capable of performing despite his limitations. The ALJ asked the VE to consider a person limited to light work with the following exceptions: (1) occasional bending, stooping, crouching, and twisting, (2) no driving, (3) no climbing, and (4) no left lower or upper pushing and/or pulling. (Tr. 64). The ALJ then asked if a person such described would have

"other light work opportunities that [the VE] believe[d] the claimant could perform." (*Id.*). The VE responded affirmatively. (*Id.*). The foregoing hypothetical question mirrors the RFC finding, includes all credible limitations, and addresses the lifting requirements that Plaintiff claims to cause the ALJ's hypothetical to be incomplete. (Tr. 26, 64). The VE's response to this hypothetical provides substantial evidence to support the ALJ's finding that Plaintiff could perform other work and a second consultative examination was not necessary. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004). Accordingly, the ALJ properly concluded that Plaintiff was not disabled.

### D. The ALJ Did Not Err in Declining to Include a Sit/Stand Option and Dexterity Limitations Within His Hypothetical

Finally, Plaintiff asserts that an "ALJ must include all of [Plaintiff's] impairments in his hypothetical questions to the VE," and that limitations listed in a hypothetical should be included within the ALJ's decision. (Pl.'s Mem. 13). The Commissioner responds that although the sit/stand and dexterity limitations were not part of the ALJ's RFC finding, the RFC finding is nevertheless supported by substantial evidence, and that the ALJ was not required to include the additional limitations such as Plaintiff contends. (Comm'r Mem. 12). The court agrees. An ALJ is not required to include "findings in the hypothetical that the ALJ ha[s] properly rejected as unsupported [by the evidence]." *Crawford*, 363 F.3d at 1161. The ALJ fully and completely analyzed and discussed Plaintiff's medical treatment history. (Tr. 26-30). An ALJ (as he did here) is free to omit (or fail to mention altogether) a limitation if the ALJ decides that the limitation is unsupported by the evidence of record. *Id.* Therefore, because the ALJ's hypothetical questions accurately reflected Plaintiff's RFC. And because the VE's response to the hypotheticals provides substantial evidence to support a finding that Plaintiff is capable of performing a significant number of jobs in the national economy, *see Phillips*, 357 F.3d at 1240,

the ALJ's failure to include limitations not within the RFC finding does not constitute reversible error. An ALJ is free to disregard limitations not demonstrated to be supported by the evidence; it follows that his declination to include sit/stand or dexterity limitations was not in error. *See Crawford*, 363 F.3d at 1161.

## VI. CONCLUSION

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and that proper legal standards were applied in reaching this determination. The ALJ's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** on August 18, 2014.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE